IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Perry Phillip McElveen, as assignee of Johnny Joe Jones, <br><br>  Plaintiff, <br><br> v. <br><br> The Cincinnati Insurance Company, <br><br>  Defendant. | Civil Action No.: 4:19-CV-02265-RBH <br><br> **ORDER** |

The matter before this Court is a breach of contract and bad faith action based on an alleged refusal by an insurance company to defend an insured in an underlying lawsuit. In the underlying lawsuit, Plaintiff Perry Phillip McElveen ("McElveen") sued several defendants for injuries he sustained in an automobile collision that occurred on March 16, 2016 that he alleged was caused by Johnny Joe Jones ("Jones"). At the time of the collision, Jones was driving an automobile that had been recently repossessed by American Acceptance Corporation. American Acceptance Corporation ("American Acceptance") sent the automobile to Jones so that he could detail the car prior to its sale at auction. American Acceptance Corporation is the named insured of a policy provided by The Cincinnati Insurance Company, which was in effect at the time of the collision. [ECF No. 1-1, ¶¶ 5-7]. In the underlying lawsuit, Jones never filed an answer or responsive pleading. McElveen obtained a sizeable judgment against Jones after default was entered. Thereafter, on July 17, 2019, Plaintiff Perry Phillip McElveen, as assignee of Johnny Joe Jones, filed a complaint in the State Court of Common Pleas of Horry County, alleging breach of contract and bad faith against Defendant The Cincinnati Insurance Company ("Cincinnati").

[ECF No. 1-1]. He alleges that Cincinnati never tendered a defense on behalf of Johnny Joe Jones in the underlying lawsuit seeking damages for Jones's negligence. [ECF No. 1-1, ¶¶ 21-24].

On August 12, 2019, Cincinnati removed this case to federal court. [ECF No. 1]. Cincinnati then filed a Motion to Dismiss the Complaint, pursuant to Federal Rules of Civil Procedures 12(b)(1) and 12(b)(6). [ECF No. 4]. Cincinnati argues that the Complaint should be dismissed because the alleged assignor was not a party to the policy of insurance issued by Cincinnati to American Acceptance, and neither Jones nor the automobile are covered under the policy. Therefore, Cincinnati argues that McElveen fails to state a claim for relief in his Complaint. On September 3, 2019, Plaintiff filed a response in opposition to the Motion [ECF No. 8], and Defendant filed its reply on September 9, 2019. [ECF No. 9]. This matter is now before the Court for review.[1]

## Factual Background

**A. Policy of Insurance**

Cincinnati issued a policy of business automobile coverage to American Acceptance, Number FIA 141 76 57, with an effective date of November 1, 2014 (the "Policy"). The Policy contains the following provision:

> "[w]e will pay all sums an "insured" legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."

---

[1] "Hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Local Civil Rule 7.08 DSC.

[ECF #4-2, p. 6].[2] As alleged in the Complaint, the Policy defines "insured" as follows:

> 1. Who is an insured
> The following are "insureds":
> a. You for any covered "auto."
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except . . .
> (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking, or storing "autos" unless that business is yours.
> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

[ECF #4-2, p. 6]. The Policy contains an endorsement titled "Repossessed Auto." The endorsement contemplates coverage for approximately sixty repossessed automobiles, and contains the following:

> A. Any "auto" you repossess is a covered "auto" but only while:
>
> 1. Being repossessed by you;
> 2. Held by you at locations listed in the Schedule for sale after repossession; or
> 3. Pending delivery after sale.

The Repossessed Auto Endorsement also contains the following exclusion: "[t]his insurance does not apply to: [a]ny "auto" while used for other business or personal purposes." Cincinnati argues these provisions preclude McElveen from making a successful claim to recover for his injuries in the underlying lawsuit. McElveen alleges that the 2007 Hyundai Azera ("Hyundai") is a covered auto and Jones is an "insured" under the Policy.

---

[2] The Policy is attached as an exhibit to the Motion to Dismiss. Plaintiff does not contest its authenticity or otherwise argue it is not integral to his Complaint. In fact, he relies upon the Policy in his brief, as well as references it in his Complaint. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (explaining that while generally, extrinsic evidence should not be considered at a 12(b)(6) stage, where a defendant attached a document to its motion to dismiss, a court may consider the document if it is integral to the claims and explicitly relied upon in the complaint, and if the plaintiff does not otherwise contest authenticity).

3

**B. Factual Allegations**

On October 16, 2017, McElveen sued several defendants, including Johnny Joe Jones and American Acceptance in state court seeking damages for negligence and gross negligence on the part of the defendants related to an automobile collision. He attached the Amended Summons and Complaint filed as Civil Action Number 2017-CP-26-5800 in the Horry County Court of Common Pleas to his Reply to the Motion to Dismiss filed in this Court. [ECF #8-1]. In the negligence action, McElveen alleged he was driving along U.S. Highway 501 in Myrtle Beach when Jones crashed into the vehicle driven by McElveen. McElveen alleged the vehicle was owned by American Acceptance. He further alleged American Acceptance was liable for the actions and omissions of Jones pursuant to the doctrine of respondeat superior and vicarious liability.

On July 17, 2019, McElveen filed a second state court action against Cincinnati, alleging breach of contract and bad faith due to Cincinnati's failure to tender a defense on behalf of Jones in the negligence lawsuit. [ECF #1-1]. This action was then removed to federal court by Cincinnati based on diversity of citizenship. According to this Complaint, at the time of the collision, Jones was driving a 2007 Hyundai Azera that had been recently repossessed and owned by American Acceptance. [ECF No. 1-1, ¶ 7]. McElveen alleges that after the Hyundai was repossessed, American Acceptance was holding it at its Myrtle Beach location for sale. [ECF No. 1-1, ¶ 8]. American Acceptance provided the vehicle to Jones so that Jones, who worked at a detail shop known as "Dynamite Detailing" could wash and detail the Hyundai in preparation for its sale at auction. [ECF No. 1-1, ¶¶ 8-9]. McElveen alleges that it was customary practice for American Acceptance to have Jones or his father clean and detail cars that had been repossessed. [ECF No.

1-1, ¶ 9]. McElveen further alleges that Jones was a permissive user of the Hyundai. McElveen alleges that Jones drove the Hyundai around the block where it was parked in order to detail the car. [ECF No. 1-1, ¶ 10]. In the process of crossing an intersection close to Dynamite Detailing, Jones and McElveen were involved in the collision. [ECF No. 1-1, ¶ 10]. McElveen alleges that after the collision, American Acceptance made an insurance claim with Cincinnati. [ECF No. 1-1, ¶ 14]. Specifically, McElveen alleges that American Acceptance emailed Cincinnati, explaining that the vehicle was sent to Dynamite Dealing to be cleaned by Jones when the collision occurred. [ECF No. 1-1, ¶ 16]. McElveen further alleges that he made a pre-suit demand on Cincinnati, indicating that Jones was an "insured" and explaining that Jones was a "permissive driver" of a vehicle owned by American Acceptance. [ECF No. 1-1, ¶ 18]. McElveen alleges that Cincinnati knew Jones was a party to the underlying negligence claim and was alleged to be driving the Hyundai. [ECF No. 1-1, ¶ 25]. McElveen alleges that Cincinnati never represented to him that Jones was not considered to be an insured or that it was contemplating a reservation of rights regarding coverage. [ECF No. 1-1, ¶ 20]. McElveen further alleges that while he forwarded a copy of the lawsuit to Cincinnati's claim representative, Cincinnati never filed an answer or responsive pleading on behalf of Jones, though it did file a responsive pleading on behalf of American Acceptance. [ECF No. 1-1, ¶¶ 21-23]. Eventually, Jones went into default, and McElveen was awarded damages in his favor and against Jones. [ECF No. 1-1, ¶¶ 29-35]. According to McElveen's Complaint, the Order included language finding Jones to be a "permissive user" of the vehicle. [ECF No. 1-1, ¶ 36].

    The lynchpin of McElveen's Complaint is that Jones is covered under the Policy issued

5

by Cincinnati to American Acceptance as a "permissive user" and that Cincinnati failed to tender a defense on Jones's behalf. Cincinnati files its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), alleging that McElveen cannot state a claim for relief under the Policy based on the provisions found within the Policy.

## Discussion

### A. Standards of Review

Defendant files its motion pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(1), which governs motions to dismiss based on the lack of subject matter jurisdiction, the plaintiff carries the burden to prove the court has jurisdiction to adjudicate the claims presented. *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991). In making the determination whether jurisdiction exists, the district court regards the pleadings' allegations as evidence on the issue, and may also consider evidence outside the pleadings without converting the proceeding to a motion for summary judgment. *Id.* A motion to dismiss for lack of subject matter jurisdiction can arise in two ways: (1) when the moving party maintains that the complaint "fails to allege facts upon which subject matter jurisdiction can be based" or (2) when the moving party maintains that the jurisdictional allegations within the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such a motion is to test the sufficiency of the facts alleged in a plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The United States Supreme Court has stated that

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In considering a motion to dismiss, the factual allegations in a complaint are accepted as true, and the plaintiff is afforded the benefit of all reasonable inferences to be drawn from the allegations contained within the complaint. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

### B. Motion to Dismiss Based on Subject Matter Jurisdiction

Cincinnati argues that its Motion to Dismiss is brought pursuant to both 12(b)(1). Here, Cincinnati removed this case to federal court, arguing that the United States District Court has jurisdiction pursuant to § 1332, arguing that both diversity of citizenship and an amount in controversy beyond $75,000 exists. Within its Motion to Dismiss, Cincinnati does not argue otherwise argued that these jurisdictional allegations are no longer true, and the allegations within the Complaint supporting a finding that jurisdiction is proper. Therefore, after a review of the pleading, this Court denies Cincinnati's motion to dismiss based on lack of subject matter jurisdiction.

**C. Motion to Dismiss For Failure to State A Claim for Relief**

Cincinnati argues that McElveen's Complaint should be dismissed because, relying on the language of the Policy, the Hyundai is not a covered auto and Jones was not a party nor was he insured under the Policy. Accordingly, Cincinnati argues McElveen is unable to state a claim for relief.[3] The Complaint alleges two causes of action based on the failure of Cincinnati to tender a defense of Jones's behalf in the underlying lawsuit. Under South Carolina law[4], an insurance company's obligation to defend and indemnify is determined by the allegations within a complaint. *Agape Senior Primary Care, Inc. v. Evanston Ins. Co.*, 304 F. Supp.3d 492, 497 (D.S.C. Jan. 19, 2018). The burden of proof is on the insured to show a claim is covered by the insurance contract, while the insurer bears the burden of establishing an exclusion to coverage exists. *Id.* The duty to defend is broader than the duty to indemnify and is triggered when the underlying complaint includes any allegation that raises the possibility that coverage exists. *Id.* Therefore, a Court must examine the allegations within the underlying complaint, along with the provisions of the insurance policy to determine whether there is a duty to defend triggered in a case. *Western World Ins. Co. v. Empire Fire & Marine Ins. Co.*, No. 7:06-217-RBH, 2006 WL 3337427, at *3 (D.S.C. Nov. 16, 2006).

---

[3] As an initial matter, Cincinnati argues that Plaintiff fails to plead a short and plain statement of a claim showing he is entitled to relief pursuant to Federal Rule of Civil Procedure 8(a)(2). After reviewing the Complaint, this Court disagrees and finds that Plaintiff has sufficiently pled the elements of a breach of contract and bad faith claim.

[4] Because this action is before this Court on the basis of diversity jurisdiction, this Court looks to the South Carolina state law to consider the arguments made regarding the insurance policy contract language and its construction. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

8

McElveen alleges a breach of contract claim. In order to state a claim for a breach of contract, the plaintiff must establish: (1) the existence of a contract; (2) breach of that contract; and (3) damages caused by this breach. *Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202, 386 S.C. 43 (S.C. Ct. App. 2009). McElveen alleges the existence of a binding contract between Jones and Cincinnati because Jones was a permissive user of the Hyundai by American Acceptance under the Policy issued to American Acceptance. [ECF #1-1, ¶¶ 49, 50]. McElveen alleges Cincinnati knew or should have known that there was a reasonable probability that Jones may be held liable for some act covered by the Policy. McElveen claims that Cincinnati violated the policy provisions and further violated the covenant of good faith and fair dealing in every insurance contract. He alleges Cincinnati violated the Policy by failing to defend Jones in the underlying lawsuit, which resulted in damages to McElveen. The Complaint also alleges an insurance bad faith claim. In order to establish such a claim, plaintiff must show: (1) the existence of a contract between the parties; (2) a refusal by the insurer to pay benefits owed under the contract; (3) the refusal is a result of the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing; and (4) resulting damages to the insured. *Id.* at 593 (citing *Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 395-96, 307 S.C. 354 (S.C. 1992)). McElveen argues that Cincinnati had no reasonable basis to refuse to provide Jones with a defense or otherwise indemnify Jones in the underlying lawsuit. McElveen further alleges that if Cincinnati had doubts as to coverage, it could have defend Jones under a reservation of rights or filed a coverage action for a court to determine its rights and obligations under the Policy.

In arguing that McElveen fails to state a claim for relief under either cause of action, Cincinnati principally relies upon the contract language within the Policy in urging this Court to grant its Motion to Dismiss.[5] Cincinnati argues that McElveen's allegations within the Complaint fail to state a claim for relief, because the Policy does not provide coverage for the facts as alleged. Cincinnati's arguments are that: (1) the collision did not involve a "covered auto;" (2) Jones was not an "insured;" (3) a policy exclusion applies to bar coverage; and (4) the Policy's coverage conditions bar coverage. Whether McElveen can state a claim for relief based upon a breach of contract contemplates that Cincinnati owed a duty to Jones to defend him in the underlying lawsuit.

Under South Carolina law, insurance policies are subject to the general rules of contract interpretation. *Episcopal Church in S.C. v. Church Ins. Co. of VT*, 993 F. Supp. 2d 581, 586-87 (D.S.C. Jan. 6, 2014). Contracts that are unambiguous, clear, and explicit will be construed according to the terms used by the parties. *Id.* However, where language used in the contract is ambiguous or capable of more than one reasonable interpretation, the contract will be construed in a manner most favorable to the insured. *Id.* Policy language extending coverage must be liberally construed in favor of coverage, and insurance policy exclusions are construed most

---

[5] Cincinnati attached a Google maps print out to its Motion, as well as the Order and Judgment from the underlying lawsuit. The Order also referenced in the Complaint, and in fact, it appears Plaintiff intended to attach it as Exhibit 5 to the Complaint. However, the Complaint does not actually have it attached as an Exhibit. The Complaint itself quotes the Order, and Plaintiff does not contest its authenticity. *See Witthohn v. Federal Ins. Co.*, 164 Fed. Appx. 395 (4th Cir. 2006) (citing *Blue Tree Hotels v. Starwood Hotels & Resorts*, 369 F.3d 212, 217 (2d Cir. 2004) (providing that courts may "also look to public records, including complaints filed in state court, in deciding a motion to dismiss.")). Nonetheless, this Court does not find the Order or the Google maps printout determinative for the purposes of determining whether the Complaint states a claim for relief.

strongly against the insurance company. *Id.* In order for an insurance company to be relieved of the duty to defend, the allegations within the Complaint must show that the alleged damages were caused by a reason "unambiguously excluded under the policy." *Auto Owners Ins. Co. v. Personal Touch Med Spa, LLC*, 763 F. Supp. 2d 769, 778 (D.S.C. Jan. 14, 2011).

The Policy defines an "insured" as "you" or "anyone else while using with your permission a covered "auto" you own, hire, or borrow except: . . . (3) [s]omeone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking, or storing "autos" unless that business is yours." Cincinnati asserts that this definition also applies under the Repossessed Autos Endorsement. Cincinnati argues that Jones does not meet the definition of "insured" in this case because he was operating the vehicle incidental to performing work on the vehicle, and that he was in the "business of selling, servicing, repairing, parking or storing 'autos'". Relatedly, Cincinnati argues that even were he considered an insured, he never made a claim or provided notice under the Policy, therefore there is no duty to provide coverage. Cincinnati focuses on the language in the Order from the underlying state court case to support its claim that Jones does not meet the definition of "insured."

In response, McElveen argues that he has adequately stated a claim for relief because he has pled facts that, if accepted as true, adequately state a claim for relief. As to Cincinnati's specific argument that Jones does not meet the definition of an "insured," McElveen argues that Cincinnati's interpretation of the Policy is contrary to South Carolina law under S.C. Code Ann. § 38-77-30(7), the definition of insured in an automobile liability policy must include "any person who uses with consent, express or implied, of the named insured the motor vehicle to which the

policy applies."[6] McElveen alleges that Jones is considered an insured because he was a "permissive user" of the vehicle provided to Jones by American Acceptance, the policyholder. A party seeking to establish coverage through permissive use must prove that the named insured gave permission. *Progressive Specialty Ins. Co. v. Murray*, 472 F. Supp. 2d 732, 735 (D.S.C. 2007). McElveen further argues that Cincinnati cannot so restrict the definition of insured that it is contrary to South Carolina law. McElveen specifically states that American Acceptance delivered the Hyundai to Jones to be cleaned and detailed prior to sale after repossession, and that American Acceptance sent correspondence to Cincinnati explaining as such. In looking to the allegations in the underlying lawsuit, McElveen also alleged that Jones was operating a vehicle owned by American Acceptance. Further, it appears from the pleadings that American Acceptance provided the Hyundai to Jones so that he could detail the Hyundai prior to its sale at auction. The parties disagree as to whether the work of detailing a car falls outside the definition of "insured" under the Policy.

A court must give policy language its "plain, ordinary meaning" and construe ambiguities in favor of the insured. *Episcopal Church in S.C.*, 993 F. Supp.2d at 586. In construing all ambiguities in favor of coverage, this Court finds that for the purposes of a Motion to Dismiss, the Complaint adequately states a claim for relief, because McElveen alleges that Jones is a permissive user and was in possession of the car while in the process of detailing the Hyundai

---

[6]McElveen points to *American Mut. Fire Ins. Co. of Charleston, Inc. v. Aetna Cas. & Surety Co.*, 400 S.E.2d 147, 303 S.C. 301 (1991), wherein the Supreme Court of South Carolina struck down a similar provision attempting to avoid liability coverage for the permissive user of a covered vehicle. Cincinnati argues that this case is inapplicable because it is interpreting a statutory auto policy, rather than a hired and non-owned auto insurance contract with a repossessed autos endorsement.

12

prior to auction. At this stage of the litigation, in reviewing the pleadings and construing ambiguities in favor of the insured, this Court finds that McElveen has sufficiently pled facts that, if believed, would suggest Jones would meet the definition of insured under the Policy because he was using the Hyundai with permission from the named insured. Additionally, it is not entirely clear whether Jones's actions in driving the vehicle around Dynamite Detailing in order to detail the Hyundai prior to auction constitutes "working in a business of selling, servicing, repairing, parking or storing" the Hyundai without additional factual inquiry. Therefore, for the purposes of this Motion, McElveen has sufficiently alleged a breach of contract between Jones and Cincinnati.

This Court has also considered Cincinnati's argument that, even assuming Jones meets the definition of "insured," he never made a claim for coverage and therefore failed to meet the conditions under the Policy. Under South Carolina law, an insurer with actual notice of a complaint having been served on an insured is not relieved of the obligation to the insured by the mere failure of an insured to provide the complaint. S.C. Code Ann. § 38-77-142(B). McElveen alleges in this current bad faith claim that American Acceptance made an insurance claim with Cincinnati. Moreover, McElveen sufficiently alleges in its pleadings and provides correspondence suggesting Cincinnati had actual notice of the collision, regardless of whether Jones ever personally contacted Cincinnati to provide notice of this claim. Therefore, McElveen has adequately pled sufficient facts to allege Cincinnati had notice in a manner to be deemed sufficient under the terms of the Policy.

Cincinnati further argues that the Hyundai, the vehicle Jones was driving at the time of the collision, was not a covered "auto" as defined under the Policy. Cincinnati argues that, at the time

13

of the collision, the Hyundai was not in the process of being possessed, was not being held a location listed in the scheduled within the Repossessed Auto Endorsement, and was not pending delivery after sale. Instead, Cincinnati argues that the Hyundai was being serviced after repossession, was not pending delivery, and was not located at the specific location listed in the Policy, therefore, no coverage exists under the Policy. Alternatively, Cincinnati argues that the Hyundai is excluded from coverage because it was being used for "other business or personal purposes," which is expressly excluded within the Repossessed Autos Endorsement. Cincinnati argues that because Jones was moving the vehicle from one side of the detailing shop to the other, it was being used for a "business purpose."

This Court notes that these type of contract language arguments are generally presented to this Court by way of a declaratory judgment action seeking to determine questions of coverage under the Policy. The question of whether Cincinnati had a duty to defend Jones is based on an analysis of whether the allegations within the underlying complaint raised a possibility of coverage. McElveen argues that Cincinnati's attempt to strictly construe the policy language in its favor and to attempt to apply this type of broad exclusion is in contravention with South Carolina insurance laws. The Policy, McElveen argues, is intended to cover repossessed automobiles, and he claims that the Complaint adequately states that the vehicle was covered under the Policy. At this stage of the litigation, McElveen states a plausible claim for relief based on the allegation within the pleadings that the Hyundai was a repossessed automobile owned by American Acceptance. McElveen alleges the Hyundai was an "auto" that was covered under the Policy, and more specifically that the Policy included an endorsement specifically for repossessed automobiles.

14

McElveen further alleges that Cincinnati breached its duty to defend Jones in the underlying lawsuit. The underlying lawsuit alleged that Jones was operating a vehicle owned by American Acceptance. After a review of the pleadings, this Court finds that McElveen has adequately stated a claim for relief based on the breach of an alleged duty to defend on the part of Cincinnati. The breach of contract claim and bad faith claim are based on allegations that Cincinnati knew or should have known that there was a reasonable possibility that Jones could be held liable in the underlying lawsuit for an act or omission covered by the Policy. Therefore, McElveen argues Cincinnati should have tendered a defense to Jones. Whether American Acceptance was or was not "in the process of" repossessing the vehicle, and whether the Hyundai is considered "pending delivery" at the time it was repossessed but prior to actually being delivered to the new purchaser of the vehicle after sale may involve further fact-finding that is outside the scope of the pleadings at this stage of the litigation. However, the Complaint before this Court includes allegations that the Hyundai was a covered auto, and McElveen has pled facts, that if believed, state a plausible claim for relief. Cincinnati's interpretation of the Policy arguably relies upon factual inquiry to determiner whether the Hyundai was covered under the Policy. Accordingly, this Court finds that the Complaint adequately states a claim for relief for both a breach of contract claim and bad faith claim at this stage of the litigation.

## Conclusion

The Court has thoroughly reviewed the entire record, including the pleadings, Defendant's motions to dismiss [ECF #4], Plaintiff's response to the motion [ECF #8], Defendant's reply [ECF #9], and the applicable law. For the reasons stated above, The Motion to Dismiss is **DENIED.**

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
October 30, 2019  R. Bryan Harwell
 Chief United States District Judge